**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| NMC Health PLC (in Administration),[1] | ) | Chapter 15 |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Case No. 20-11385 (MFW) |
| | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION**
**OF THE FOREIGN REPRESENTATIVES FOR PROVISIONAL RELIEF**

Dated: Wilmington, Delaware
          May 28, 2020

**DLA PIPER LLP (US)**

R. Craig Martin, Esq. (DE Bar No. 5032)
1201 North Market Street, 21st Floor
Wilmington, DE 19801
Tel: (302) 468-5700
Fax: (302) 778-7834
Email: craig.martin@us.dlapiper.com

-and-

Thomas R. Califano, Esq.
Erik F. Stier, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 335-4500
Fax: (212) 335-4501
Email: thomas.califano@us.dlapiper.com
           erik.stier@us.dlapiper.com

*Attorneys for the Foreign Representatives*

---

[1] The Foreign Debtor is incorporated in England and Wales and has the English Company Number of 07712220. The Foreign Debtor's mailing address (and its registered office) is Suite 3 Regency House, 91 Western Road, Brighton, BN1 2NW.

## TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ............................................................................. 1

II. FACTUAL BACKGROUND ............................................................................. 4

III. THE COURT SHOULD GRANT THE PROVISIONAL RELIEF REQUESTED
UNDER SECTION 1519 OF THE BANKRUPTCY CODE ........................................... 4

IV. THE PROVISIONAL RELIEF IS AUTHORIZED BY SECTION 1519 OF THE
BANKRUPTCY CODE ....................................................................................... 5

V. THE FOREIGN REPRESENTATIVES SATISFIES THE REQUIREMENTS OF
SECTION 1519 ............................................................................................. 7

    **A.**    Irreparable Harm Would Result from Denial of the Provisional Relief ................ 9

    **B.**    The Foreign Representatives Are Likely to Succeed on the Merits of Their
Request for Recognition .................................................................................. 11

    **C.**    Granting the Provisional Relief Will Not Result in Greater Harm to
Nonmoving Parties ......................................................................................... 12

    **D.**    The Public Interest Favors Granting the Provisional Relief ................................ 14

VI. IN THE ALTERNATIVE, THE COURT SHOULD GRANT THE ENGLISH
COURT COMITY AND IMPOSE PROVISIONAL RELIEF ........................................ 15

VII. CONCLUSION .......................................................................................... 19

EAST\174411506.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Learning Ctrs. Ltd.*,
    728 Fed.3d 301 (3d Cir. 2013)...............................................................................................14

*Am. Film Techs v. Taritero (In re Am. Film Techs.)*,
    175 B.R. 847 (Bankr. D. Del. 1994) ......................................................................................15

*Cornfeld v. Inv. Overseas Servs., Ltd.*,
    471 F. Supp. 1255 (S.D. N.Y. 1979)......................................................................................15

*Crissman v. Dover Downs Entm't Inc.*,
    239 F.3d 357 (3d. Cir. 2001)...................................................................................................9

*Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restr., Inc.)*,
    79 B.R. 992 (Bankr. N.D. Ind. 1986) ....................................................................................15

*Hilton v. Guyot*,
    159 U.S. 113 (1895)...............................................................................................................17

*In re Adelphia Comm'cns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ..................................................................................15

*In re Altos Hornos de Mexico, S.A.B. de C.V.*,
    Case No. 16-11890 (KG) (Bankr. D. Del. Aug. 17, 2016) .....................................................6

*In re Arctic Glacier*,
    Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) ......................................................6

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*,
    91 B.R. 661 (Bankr. S.D. N.Y. 1988) ..................................................................................10

*In re Catalyst Paper Corp.*,
    No. 12-10221 (Bankr. D. Del. Jan. 19, 2012) (PJW)..............................................................6

*In re Crystallex Int'l Corp.*,
    Case No. 11-14074 (PJW) (Bankr. D. Del. Dec. 28, 2011).....................................................7

*In re Hanjin Shipping Co., Ltd.*,
    Case No. 16-27041 (JKS) (Bankr. D. N.J. Sept. 6, 2016) ......................................................7

*In re Innua Canada Ltd.*,
    Case No. 09–16362 (DHS), 2009 WL 1025088 (Bankr. D. N.J. Mar. 25, 2009)....................12

*In re Irish Bank Resolution Corp. (In Special Liquidation)*,
　　Case No. 13-12159 (CSS) (Bankr. D. Del. Oct. 10, 2013)................................................8, 12

*In re Kraus Carpet Inc., et al.*,
　　Case No. 18-12057 (KG) (Bankr. D. Del. Sep. 12, 2018) ..........................................................6

*In re Lazarus Burman Assocs.*,
　　161 B.R. 891 (Bankr. E.D. N.Y. 1993).....................................................................................14

*In re Lee*,
　　348 B.R. 799 (Bankr. W.D. Wash. 2006) ...................................................................................8

*In re Lines*,
　　81 B.R. 267 (Bankr. S.D. N.Y. 1988) .......................................................................................10

*In re Metinvest B.V.*,
　　Case No. 16-10105 (LSS) (Bankr. D. Del. Jan. 29, 2016) .........................................................6

*In re Netia Holdings, S.A.*,
　　278 B.R. 344 (Bankr. S.D. N.Y. 2002) .....................................................................................10

*In re NewSat Ltd., et al.*,
　　Case No. 15-10810 (KJC) (Bankr. D. Del. Apr. 16, 2015) .......................................................6

*In re Pro-Fit Int'l Ltd.*,
　　391 B.R. 850 (Bank C.D. Cal. 2008) ......................................................................................5, 7

*In re SEL Mfg. Co. Ltd.*,
　　Case No. 19-10988 (MFW) (Bankr. D. Del. May 9, 2019) .......................................................6

*In re Worldwide Educ. Servs., Inc.*,
　　494 B.R. 494 (Bankr. C.D. Cal. 2013)........................................................................................8

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
　　412 F.3d 418 (2d Cir. 2005).....................................................................................................17

*Kos Pharms., Inc. v. Andrx Corp.*,
　　369 F.3d 700 (3d Cir. 2004).....................................................................................................12

*Laker Airways Ltd. v. Sabena, Belg. World Airlines*,
　　731 F.2d 909 (D.C. Cir. 1984)............................................................................................17, 18

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*,
　　669 F.3d 374 (3d Cir. 2012).......................................................................................................9

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
　　920 F.2d 187 (3d Cir. 1990).....................................................................................................12

Page

*Overseas Inns S.A. P.A. v. United States,*
    911 F.2d 1146 (5th Cir. 1990) ........................................................................17

*Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.,*
    20 N.C. J. INT'L L. & COMM. REG. 629 (1995) ...............................................18

*Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.),*
    281 B.R. 231 (Bankr. D. Del. 2002) ................................................................14

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,*
    825 F.2d 709 (2d Cir. 1987) ......................................................................6, 10

**Statutes**

11 U.S.C. § 1501 .................................................................................................14

11 U.S.C. § 1501(a) ....................................................................................5, 9, 15

11 U.S.C. § 1501(a)(1) ..........................................................................................5

11 U.S.C. § 1508 .................................................................................................16

11 U.S.C. § 1517(a) ..............................................................................................4

11 U.S.C. § 1519(a)(3) ..........................................................................................5

11 U.S.C. § 1519(e) ...............................................................................................7

11 U.S.C. § 1520(a) ..............................................................................................4

11 U.S.C. § 1520(a)(1) ........................................................................................11

11 U.S.C. § 1521(a)(7) ..........................................................................................5

Samuel L. Bufford, UNITED STATES INTERNATIONAL INSOLVENCY LAW 2008-
    2009 (2009), at 33 ............................................................................................16

**Other Authorities**

6A NORTON BANKR. L. & PRAC. 2d § 152:16 (1997-98) ....................................17

CROSS-BORDER INSOLVENCY AND CONFLICT OF JURISDICTIONS A US-EU
    EXPERIENCE (Georges Affaki, ed. 2007) .........................................................16

H. Rep. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977) .................................13

H. Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005) .....................................12

iv

**Page**

Hon. Louise DeCarl Adler, *Managing the Chapter 15 Cross-Border Insolvency Case: A Pocket Guide for Judges* (Fed. Jud. Ctr. 2014) ........................................................... 4

Richard Dixon Fleming, Mark Firmin and Ben Cairns, in their capacity as the duly authorized joint administrators (in such capacity, jointly, the "**Foreign Representatives**") of NMC Health PLC (in Administration) (the "**Foreign Debtor**" or the "**Company**") as a debtor in administration under English law, pursuant to the Insolvency Act 1986 (the "**UK Proceeding**" or the "**Administration**") pending before the High Court of Justice, Business and Property Courts of England and Wales, Insolvency and Companies List (the "**English Court**"), by and through their undersigned counsel, respectfully submit this memorandum of law (the "**Memorandum of Law**") in support of the *Emergency Motion of the Foreign Representatives for Provisional Relief* (the "**Emergency Motion**").  The Foreign Representatives incorporate by reference the *Declaration of R. Craig Martin Regarding Determination of Foreign Law* [D.I. 4] (the "**Martin Declaration**"), the *Declaration of Mr. Christopher Mathew Parker in Support of Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* [D.I. 5] (the "**Parker Declaration**") and the *Declaration of Richard Fleming in Support of Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* [D.I. 6] (the "**Fleming Declaration**"), as if fully set forth in this Memorandum of Law.  In support of the Emergency Motion, the Foreign Representatives further state as follows:

## I.
## PRELIMINARY STATEMENT

1.      The Foreign debtor is the United Kingdom-based parent company to a group of subsidiaries (with the Foreign Debtor, together, the "**NMC Group**") that operate a network of private medical facilities across 19 countries, primarily focused in the Middle East.

2.      Following revelations of financial irregularity, suspected fraudulent behavior, and the Company's suspension from the London Stock Exchange, Abu Dhabi Commercial Bank

PJSC ("**ADCB**"), in its capacity as financial creditor of the Company, submitted an application for administration of the Company on April 2, 2020, (the "**Application**") to the English Court in accordance with the requirements of Rule 3.3 of the Insolvency (England and Wales) Rule 2016 and paragraph 12(1)(b) of Schedule B1 to the Insolvency Act, requesting, among other relief, that the English Court enter an administration order in relation to the Company and appoint Richard Dixon Fleming, Mark Firmin and Ben Cairns as proposed administrators.  The English Court entered an order (the "**Administration Order**") granting the relief requested in the Application, and among other things, appointing the proposed administrators of the Company (the "**Administrators**") as of April 9, 2020.  From the time of appointment by the English Court, an automatic moratorium on creditor actions was imposed, and the Administrators were authorized to commence this chapter 15 bankruptcy case under title 11 of the United States Code (the "**Bankruptcy Code**") in order to petition this Court for recognition of the UK Proceeding as a foreign main proceeding.

3.      On May 28, 2020 (the "**Petition Date**"), the Foreign Representatives filed the *Verified Petition of the Foreign Representatives for Recognition of Foreign Main Proceeding and Certain Related Relief* (the "**Verified Petition**") in connection with the Official Form 401 Petition (the "**Petition**," and together with the Verified Petition, the "**Chapter 15 Petition**"), commencing this chapter 15 case, seeking recognition of the UK Proceeding as "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, given that the relief granted by the English Court is not extraterritorial.

4.      The recognition of the UK Proceeding is important to the Administration and the Foreign Debtor's maximization of value as a whole, because it is aimed at protecting the Foreign Debtor and its assets within the territorial jurisdiction of the United States from creditor actions.

2

The recognition will allow for centralized administration of the Foreign Debtor's assets by permitting coordination between the English Court and this Court if necessary to maximize the value of the Foreign Debtor's interest in its U.S. assets.  Without this Court's recognition of the UK Proceeding, creditor enforcement actions threaten to undercut the equal treatment of creditors, diminish the value of the Foreign Debtor, and undermine the Foreign Representatives' administration of its insolvency, which could ultimately result in diminished recoveries to the creditors of the Foreign Debtor.

5.      Until the recognition hearing and entry of an order thereon, however, the Foreign Debtor is exposed to continued (or potentially new) litigation and attempts by global creditors to attach assets of the Foreign Debtor in the United States.  The Provisional Relief (as defined in the Emergency Motion) is required to ensure the fair, efficient and centralized administration of the Foreign Debtor's assets and prevent individual creditors and other persons and entities from depleting the Foreign Debtor's assets.  The Provisional Relief is necessary to realize the precise intent and objectives of chapter 15 of the Bankruptcy Code.  The Foreign Representatives believe the relief sought in the Emergency Motion is important in paving a path to a successful, orderly and value-maximizing administration of the Foreign Debtor's insolvency by avoiding a gap in protection arising from the twenty-one-day notice period for the Chapter 15 Petition required by the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

6.      As demonstrated below and in the various papers filed in this chapter 15 case, the Foreign Representatives are likely to prevail in obtaining final recognition of the UK Proceeding as a foreign main proceeding.  As a result, the Foreign Representatives will be entitled upon recognition to the relief it seeks in the Emergency Motion.   Accordingly, the Foreign

Representatives respectfully request that for the reasons set forth below, the Court enter the order attached as Exhibit A to the Emergency Motion.

## II.
## FACTUAL BACKGROUND

7.    The detailed factual background regarding the Foreign Debtor, including its business operations, capital and debt structure and the events leading to the commencement of the Administration and the filing of this chapter 15 case, is set forth in the Verified Petition, which is incorporated in this Memorandum of Law by reference as if fully set forth here.

## III.
## THE COURT SHOULD GRANT THE PROVISIONAL RELIEF REQUESTED UNDER SECTION 1519 OF THE BANKRUPTCY CODE

8.    Upon recognition of the UK Proceeding as a foreign main proceeding, the Foreign Representatives and the Foreign Debtor will be entitled to entry of an order providing them with various forms of relief, including, but not limited to that available under section 1520 of the Bankruptcy Code, such as enforcement of the automatic stay. *See* 11 U.S.C. § 1520(a).  Section 1517 of the Bankruptcy Code provides that an order recognizing a foreign proceeding may only be entered after notice and a hearing, and Bankruptcy Rule 2002(q) provides that the notice period for a chapter 15 petition must be at least twenty-one days.  11 U.S.C. § 1517(a); FED. R. BANK. P. 2002 (q).  Until such time and absent provisional relief, there is no stay applicable in the United States during the period between filing the chapter 15 petition and entry of a recognition order. *See generally* Hon. Louise DeCarl Adler, *Managing the Chapter 15 Cross-Border Insolvency Case:  A Pocket Guide for Judges* (Fed. Jud. Ctr. 2014).  Accordingly, until the Court enters an order recognizing the UK Proceeding, the Foreign Debtor urgently requires Provisional Relief to protect and preserve the value of its assets located in the United States and preserve the centralized administration of its estate.  Without the certainty that the automatic stay

4

protection can provide, the Foreign Debtor will likely continue to face individualized actions by creditors, causing disruption to the UK Proceeding and potentially diminishing the assets available for the benefit of all creditors.  The purpose of chapter 15 is to prevent exactly such harm.  *See* 11 U.S.C. § 1501(a)(1).

**IV.**
**THE PROVISIONAL RELIEF IS AUTHORIZED BY SECTION 1519 OF THE BANKRUPTCY CODE**

9.      The Bankruptcy Code authorizes certain relief for a foreign debtor, including extending section 362 of the Bankruptcy Code to a foreign debtor and its assets within the territorial jurisdiction of the United States during the period between filing of the petition and when the petition for recognition is granted.  11 U.S.C. §§ 1519(a)(3) & 1521(a)(7).[2]  Under chapter 15, though such relief is not automatic upon filing, the Court has discretion to grant such relief on a provisional basis.  *See In re Pro-Fit Int'l Ltd.*, 391 B.R. 850, 864 (Bank C.D. Cal. 2008) ("Unlike cases filed under other chapters of the U.S. bankruptcy code, the filing of a Chapter 15 Petition does not automatically impose a stay on creditor collection efforts.") (citation omitted).

10.      The success of the Administrators' efforts in preserving its estate's value will depend in large part on cooperation from multiple creditor constituencies across jurisdictions. To be in the best position to achieve the desired result for all of its constituencies, the Foreign Debtor must maintain operations, preserve confidence of its employee work force, customer base, and vendor fleet, and avoid a race to the courthouse in one part of the world by some creditors to obtain advantage over other creditors, perhaps, in a different part of the world.

---

[2] In addition, section 105(a) of the Bankruptcy Code, made applicable in chapter 15 cases by section 103(a) of the Bankruptcy Code, grants the Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  Such provisions include the purpose and intent of chapter 15. *See* 11 U.S.C. §1501(a).  The Provisional Relief requested by the Foreign Representatives is critical to realizing such purpose and intent and, thus, is also authorized by this grant of power.

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 714 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail."). Accordingly, the Foreign Representatives seek Provisional Relief during the disposition of the Chapter 15 Petition to ensure no creditor jeopardizes the Company's future as a going concern.

11.    Courts, including those in this district, have granted similar provisional relief pursuant to section 1519(a) of the Bankruptcy Code in a number of chapter 15 cases. *See, e.g., In re SEL Mfg. Co. Ltd.,* Case No. 19-10988 (MFW) (Bankr. D. Del. May 9, 2019) [D.I. 14] (order granting provisional relief and imposing the automatic stay); *In re Kraus Carpet Inc., et al.,* Case No. 18-12057 (KG) (Bankr. D. Del. Sep. 12, 2018) [D.I. 17] (granting recognition of foreign main proceeding on an interim basis and imposing the automatic stay the day following the chapter 15 petition filing); *In re Altos Hornos de Mexico, S.A.B. de C.V.,* Case No. 16-11890 (KG) (Bankr. D. Del. Aug. 17, 2016) [D.I. 17] (granting provisional relief on the second day of the case and staying execution against the debtor's assets within the territorial jurisdiction of the United States); *In re Metinvest B.V.,* Case No. 16-10105 (LSS) (Bankr. D. Del. Jan. 29, 2016) [D.I. 28] (granting temporary moratorium on creditor action to allow the debtor to negotiate and finalize its contemplated restructuring); *In re NewSat Ltd., et al.,* Case No. 15-10810 (KJC) (Bankr. D. Del. Apr. 16, 2015) [D.I. 21] (granting temporary restraining order on first day of the case to avoid irreparable harm to restructuring efforts); *In re Arctic Glacier,* Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order granting provisional relief, including protections of the automatic stay); *In re Catalyst Paper Corp.,* No. 12-10221 (Bankr. D. Del. Jan. 19, 2012) (PJW) [D.I. 22] (applying in a chapter 15 case sections 365(e) and 362 on a

provisional basis pursuant to section 1519); *In re Crystallex Int'l Corp.,* Case No. 11-14074 (PJW) (Bankr. D. Del. Dec. 28, 2011) [D.I. 20] (order granting provisional relief, including protections of automatic stay); *In re Hanjin Shipping Co., Ltd.,* Case No. 16-27041 (JKS) (Bankr. D. N.J. Sept. 6, 2016) [D.I. 22] (giving full force and effect on an interim basis to the Korean commencement order issued by the foreign court and staying the commencement and continuation of any action against the foreign debtor).

**V.**
**THE FOREIGN REPRESENTATIVES SATISFIES THE REQUIREMENTS OF**
**SECTION 1519**

12.     Section 1519(e) of the Bankruptcy Code provides that "the standards, procedures, and limitations applicable to an injunction" apply when a foreign representative seeks provisional relief.  11 U.S.C. § 1519(e).  In the context of the type of relief requested in the Emergency Motion, namely the provisional stay of the commencement or continuation of any litigation against the Foreign Debtor, bankruptcy courts that grant provisional stays pending the final recognition hearing on a motion have done so without applying the full panoply of protections that would otherwise be required when traditional injunctive relief is sought.  Thus, provided a foreign debtor seeks traditional "automatic stay" type relief simply to bridge to the final recognition hearing, the injunctive standards of section 1519(e) of the Bankruptcy Code do not impose any significant requirement and will be satisfied if the provisional relief is akin to application of the automatic stay in section 362 of the Bankruptcy Code.  Here, then, the limitations and procedural safeguards otherwise required in a standard injunctive relief are not required.  *See In re Pro-Fit*, 391 B.R. at 865 ("[T]he fact that § 362 takes effect automatically in all bankruptcy cases, except those filed under chapter 15, without the limitation or procedural safeguards of an injunction, supports the inference that these limitations and procedural safeguards are not needed when a court imposes a § 362 in a chapter 15 case on an interim

7

basis."); *see also In re Lee*, 348 B.R. 799, 801 (Bankr. W.D. Wash. 2006) (holding under section 1521(e)'s language that is the same as section 1519(e)'s that injunctive relief could be granted on motion since the legislative history of chapter 15 did not intend to change the prior practice seeking to provisionally protect foreign insolvency proceedings from negative consequence of U.S. litigation).

13.    In this district, the trial courts have followed the *Pro-Fit* approach and have granted provisional relief similar to that requested even when objecting parties have argued that the heightened standards of injunctive relief apply.  For example, in *In re Irish Bank Resolution Corp. (In Special Liquidation)*, Case No. 13-12159 (CSS) (Bankr. D. Del. Oct. 10, 2013), certain creditors objected to entry of a provisional stay of litigation pending a hearing on final recognition based on allegations that the traditional injunctive standards had not been satisfied, specifically with respect to likelihood of success and irreparable injury, basing their argument on *In re Worldwide Educ. Servs., Inc.,* 494 B.R. 494 (Bankr. C.D. Cal. 2013).  This Court held that this approach was "too strict" and that like the *Pro-Fit* case, this Court's review of provisional relief is informed by the standards governing the automatic stay in a chapter 11.  (*See* Martin Decl., Ex. 4, Tr. at 46:16-47:3 (expressly rejecting the *Worldwide Educational Services* decision and imposing a limited stay on litigation on the ground that the short time between the petition for chapter 15 and the final hearing would not result in preventing "anything of any real import . . . .").)  Here, the Provisional Relief sought by the Foreign Representatives is similar to that in *Irish Bank Resolution* cases in that the Foreign Representatives seeks merely to impose a stay on the commencement or continuation of any litigation, for less than a month, until a final hearing on the Petition is reasonable and well within this Court's discretion to grant.  If,

8

however, this Court does impose the injunctive relief standards to the Emergency Motion, the Foreign Representatives submit that those standards are also satisfied.

14.     The Third Circuit has established four factors for trial courts to consider when determining whether to grant injunctive relief:  "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether the relief requested will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief is in the public interest."  *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (*quoting Crissman v. Dover Downs Entm't Inc.*, 239 F.3d 357, 364 (3d. Cir. 2001)).  All four factors are met here, and the Court should grant the Provisional Relief.

### A.     Irreparable Harm Would Result from Denial of the Provisional Relief

15.     If the Provisional Relief requested by the Foreign Representatives is not granted, the Foreign Debtor and creditors in the UK Proceeding will face irreparable harm.  First, the UK Proceeding has stopped all creditor action.  Allowing parties outside of the United Kingdom to end-run the English Court in a United States court while this chapter 15 case is pending would be unjust to the Foreign Debtor and to those creditors that are otherwise subject to the jurisdiction of the English Court and cannot take similar action.  Moreover, any such resolution of claims outside of the UK Proceeding and preferential recoveries by creditors contrary to English law seriously undermine the fair and efficient administration of the estate to the detriment of the Foreign Debtor and its creditors in direct contradiction to Congress' articulated intent in enacting chapter 15 of the Bankruptcy Code.  11 U.S.C. §1501(a).

16.     Second, the Foreign Representatives believe that this Provisional Relief in the United States is crucial to prevent certain creditors from continuing litigation against the Foreign Debtor and to prevent efforts of other creditors to the Foreign Debtor and its subsidiaries from

9

efforts to execute upon the Foreign Debtor's assets that are being marshalled by the English Court.  Without such Provisional Relief, the Foreign Debtor will face irreparable harm resulting from the piecemeal loss of assets by collection and enforcement efforts.  The Provisional Relief is necessary to maintain the *status quo* until the order recognizing the UK Proceeding is entered.

17.    Third, allowing certain creditors to continue with their litigation and collection efforts against the Foreign Debtor in the United States would have an immediate and detrimental impact on the Administrators' ability to focus on the Foreign Debtor's administration.  Thus, the Foreign Representatives submit that the brief stay between the commencement of this case and the final hearing will prevent the harm that would arise if it is required to continue using resources and focusing on the pending litigation.

18.    Fourth, the Foreign Representatives believe that such actions may have a cascading effect, prompting other creditors to pursue enforcement strategies to the detriment of stakeholders and defeating the purpose of the UK Proceeding.

19.    It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D. N.Y. 1988).  It has also been held that harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted.  *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D. N.Y. 1988); *In re Netia Holdings, S.A.*, 278 B.R. 344, 352 (Bankr. S.D. N.Y. 2002) ("It is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."). Based on the above considerations, the Foreign Representatives submit that the irreparable harm

would result from the denial of the Provisional Relief.  Thus, the Provisional Relief should be granted.

**B.      The Foreign Representatives Are Likely to Succeed on the Merits of Their Request for Recognition**

20.      As set forth in the Chapter 15 Petition and the *Memorandum of Law in Support of the Motion of the Foreign Representatives for Chapter 15 Recognition and Final Relief*, each of which is incorporated here in full by this reference, the Foreign Representatives each satisfy the Bankruptcy Code's definition of a "foreign representative," the UK Proceeding satisfies the Bankruptcy Code's definition of a "foreign proceeding," and because Foreign Debtor's center of main interest is in the United Kingdom, the UK Proceeding is entitled to recognition as a foreign main proceeding at which time the automatic stay will apply in this case.  *See* 11 U.S.C. § 1520(a)(1).  Additionally, the English Court determined the United Kingdom as the Foreign Debtor's center of main interest in its decision to commence the UK Proceeding.

21.      The Petition meets the requirements of section 1515 of the Bankruptcy Code as (i) the Petition is accompanied by a true copy of the court appointment as endorsed by the English Court, effectuating the UK Proceeding; (ii) the Foreign Representatives filed a statement with the Petition, identifying the UK Proceeding as the only pending proceeding with respect to the Foreign Debtor known to the Foreign Representatives; (iii) all documents provided pursuant to section 1515(b) of the Bankruptcy Code are in English; and (iv) as required by Bankruptcy Rule 1007(a)(4), the Foreign Representatives have also filed a statement, identifying the parties to litigation with respect to the Foreign Debtor pending within the United States and the parties against which provisional relief is requested.  Thus, all of the conditions to the entry of an order recognizing the UK Proceeding as a foreign main proceeding under the Bankruptcy Code have been satisfied.  Thus, the Foreign Debtor is entitled to have the UK Proceeding recognized as a

EAST\174411506.5

"main" proceeding.  In sum, as demonstrated here as well as in the Verified Petition and the *Memorandum of Law in Support of Motion of the Foreign Representatives for Chapter 15 Recognition and Final Relief* [D.I. 3], the Foreign Representatives will likely succeed on their recognition argument.

### C.     Granting the Provisional Relief Will Not Result in Greater Harm to Nonmoving Parties

22.     Granting the Provisional Relief will not result in harm to nonmoving parties, and the interests of creditors and other interested parties, including the Foreign Debtor, are "sufficiently protected" as required by section 1522(a) of the Bankruptcy Code.  While the Bankruptcy Code does not explicitly define the meaning of "sufficiently protected," the legislative history indicates that the section was meant to ensure that "the foreign proceeding [is not] seriously and unjustifiably injuring United States creditors."  H. Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005).  Here, the requested Provisional Relief will simply preserve the *status quo* until the disposition of the Chapter 15 Petition and merely grants relief that the Foreign Representatives will obtain upon recognition of the UK Proceeding as a foreign main proceeding.  *See, e.g., Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) ("One of the goals of the preliminary injunction analysis is to maintain the *status quo*, as defined as the last peaceable, noncontested status of the parties.") (*quoting Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)); *see also In re Innua Canada Ltd.*, Case No. 09–16362 (DHS), 2009 WL 1025088, at *4 (Bankr. D. N.J. Mar. 25, 2009) (entering provisional relief to stay litigation because, among other reasons, "creditors or interested parties will not suffer significant harm or hardship because the provisional relief is temporary, pending the hearing on recognition."); *see also* discussion *supra* regarding *In re Irish Bank Resolution*.

23.    From the time of appointment by the English Court, an automatic moratorium on creditor actions was imposed in the United Kingdom, similar to the automatic stay provided under section 362 of the Bankruptcy Code.  Thus, if granted, the Provisional Relief will equalize the rights and remedies of the Company's creditors in both jurisdictions.  As the legislative history to section 362 of the Bankruptcy Code states, "The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property."  H. Rep. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).  The stay imposed by section 362 of the Bankruptcy Code is one of the fundamental protections provided by United States bankruptcy law, halting collection and attachment efforts as well as creditor harassment, providing debtors with necessary breathing room from the financial pressures to refocus on the debt restructuring and business reinvigoration efforts.  Therefore, the Foreign Representatives contend that the requested Provisional Relief results in no harm to nonmoving parties and should be granted.

24.    As mentioned above, there is substantial likelihood that relief similar to the Provisional Relief will be granted once the UK Proceeding is recognized as a foreign main proceeding.  Any conceivable harm that could be suffered by nonparty movants resulting from the entry of an order granting Provisional Relief a few weeks earlier than it would otherwise apply is *de minimis*, if any at all.  Besides, any dissenting creditors that object to the relief requested will have an opportunity to be heard and may apply to this Court for relief if they believe they are harmed by the terms of the order on the Emergency Motion.

25.    Lastly, the denial of the requested Provisional Relief would effectively elevate creditors that take actions against the Foreign Debtor in the United States above all other creditors of the Foreign Debtor, allowing some creditors to gain an unfair advantage over all

13

other stakeholders.  Resources and the Administrators' time also would be taken away from the efforts to administer the UK Proceeding.  These harms would be in contravention of the intents, purposes, and protections for which chapter 15 of the Bankruptcy Code was enacted. Consequently, the balance of hardships weighs in favor of granting the requested Provisional Relief.

### D.  The Public Interest Favors Granting the Provisional Relief

26.  Granting the Provisional Relief is in the public interest as it furthers the purposes of chapter 15 of the Bankruptcy Code as expressly intended by Congress.  Indeed, in this case, the underlying reasons for the need of Provisional Relief align perfectly with the purpose behind chapter 15 of the Bankruptcy Code, namely, to level the playing field for the Foreign Debtor and all of its parties in interest in the United States and the United Kingdom by protecting the Foreign Debtor's assets in the United States, protecting the interests of the Foreign Debtor's creditors in the UK Proceeding, and eliminating inconsistencies in rulings of the English Court and United States courts—each of which aims at maximizing the value of the Foreign Debtor's estate for the benefit of all interested parties.

27.  The requested Provisional Relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate efforts to conduct the Administration in an orderly manner and maximize value for the ultimate benefit of the Foreign Debtor's creditors.  *See generally* 11 U.S.C. § 1501 (discussing the purpose and scope of chapter 15); *see also ABC Learning Ctrs. Ltd.*, 728 Fed. 3d 301, 306 (3d Cir. 2013) (emphasizing that chapter 15 serves the "universalism" approach to transnational bankruptcy, preferring that U.S. courts act in aid of foreign proceedings); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.),* 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting

14

a successful reorganization is one of the most important public interests."); *In re Lazarus Burman Assocs.,* 161 B.R. 891, 901 (Bankr. E.D. N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."); *see also In re Adelphia Comm'cns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."); *Am. Film Techs v. Taritero (In re Am. Film Techs.),* 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (quoting *Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restr., Inc.),* 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

## VI.
## IN THE ALTERNATIVE, THE COURT SHOULD GRANT THE ENGLISH COURT COMITY AND IMPOSE PROVISIONAL RELIEF

28.     The Provisional Relief sought also comports with the long-standing policy of extending comity to foreign jurisdictions and promoting cooperation between jurisdictions in cross-border insolvency proceedings.   Specifically, section 1501(a) of the Bankruptcy Code provides:

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of —
>
> > (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
> >
> > (4) protection and maximization of the value of the debtors' assets; and
> >
> > (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a); *see, e.g., Cornfeld v. Inv. Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D. N.Y. 1979) (stating that recognizing the Canadian liquidation proceeding would further

15

"American public policy" because "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction"); 11 U.S.C. § 1508 ("In interpreting [Chapter 15], the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions.").

29.    When the United States adopted chapter 15, it included references to "comity" because as U.S. insolvency law evolved in the later part of the twentieth century, it became clear that "comity is the central consideration in determining whether to provide relief to a foreign insolvency representative."  *See* Burton Lifland, *Chapter 15 of the United States Bankruptcy Code:  An Annotated Section-By-Section Analysis*, in CROSS-BORDER INSOLVENCY AND CONFLICT OF JURISDICTIONS A US-EU EXPERIENCE (Georges Affaki, ed. 2007), at 31, 45; *see also* Samuel L. Bufford, UNITED STATES INTERNATIONAL INSOLVENCY LAW 2008-2009 (2009), at 33 ("Chapter 15 appears to restrict the role [of] comity, and provides for it only in the context of a court's decision to provide additional assistance to a foreign representative under § 1507. However, comity continues to play a large role in the context of transnational insolvency cases and chapter 15  . . . [and] its influence in chapter 15 is pervasive.").  Thus, chapter 15 modified Articles 7 and 9 of the Model Law to include references to comity.

30.    Section 1507 of the Bankruptcy Code provides that "[i]n determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure compliance with a list of factors.  Chapter 15 of the Bankruptcy Code has expressly imported into its provisions the concept of comity, and, thus, at least for the provisional period, it would be appropriate for this Court, in reliance on its general equitable

16

powers in section 105 of the Bankruptcy Code, to impose the Provisional Relief here requested under general principles of comity.

31.    While the Bankruptcy Code does not define "comity," courts have explained the concept as a "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  The principle of comity is used flexibly to guide a court's decision making process as comity "is not a rule of law, but one of practice, convenience, and expediency." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990) (quotation marks and citation omitted).  "[C]omity compels national courts to act at all times to increase the international legal ties that advance the rule of law within and among nations . . . . [C]omity serves our international system like the mortar which cements together a brick house.  No one would willingly permit the mortar to crumble or be chipped away for fear of compromising the entire structure." *Laker Airways Ltd. v. Sabena, Belg. World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984).  The Second Circuit Court of Appeals described comity as being "concerned with maintaining amicable working relationships between nations, a shorthand for good neighborliness, common courtesy and mutual respect between those who labor in adjoining judicial vineyards." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005).

32.    In short, "comity" is the notion that a court should defer to foreign laws or judgments of foreign courts out of respect for a foreign nation when the deferring court would normally take a different action with respect to the dispute at issues (of course if the deferring court would reach the same conclusion, comity is not necessary).  *See* 6A NORTON BANKR. L. &

17

PRAC. 2d § 152:16 (1997-98) ("Because private international law is focused on the relationship between the person that has cross-border contacts, it is necessarily a set of principles designed to determine which nation's laws should apply to any given dispute. These principles govern the determination of whether comity should be extended to the non-US proceedings, judgments or laws."). The problem with "comity" from a statutory standpoint is that the "boundaries of the duties it imposes are inherently uncertain" since the doctrine "turns on the consideration of a number of facts that vary according to the specific facts and circumstances of each case. Thus, the appropriate weighting of foreign court decisions must be decided on a case by case basis." Bufford, *supra*, at 34-5 (citing *Laker Airways Ltd.*, 731 F.2d at 937); *see also Note: The Extension of Comity to Foreign Bankruptcy Proceedings: Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.,* 20 N.C. J. INT'L L. & COMM. REG. 629, 636 (1995) ("Because comity is an exercise of a court's discretion in light of the facts of the specific case, U.S. courts are free to balance potentially conflicting policy considerations and to deny comity to foreign bankruptcy proceedings").

33.    In the instant case, the English Court has appointed the Administrators, giving effect to a moratorium on creditor actions against the Foreign Debtor in the United Kingdom. Now, an application of similar protections is urgently needed to protect the Foreign Debtor's asset and interests of its creditors as a whole in the United States to ensure the Foreign Debtor has ample breathing room to implement its administration strategy. The Foreign Representatives respectfully submit to this Court that, in the alternative to granting provisional relief under section 1519 and 1521 of the Bankruptcy Code, it should impose a provisional stay under the common law principles of comity to enable the Foreign Debtor to achieve just that. In balancing the issues, the Foreign Representatives admit that the limited relief sought for a short time until a

final hearing fits well within the legal doctrine of comity that has prevailed in the United States for at least 120 years.  For these alternative reasons then, the Court should grant the Provisional Relief requested in the Emergency Motion.

## VII.
## <u>CONCLUSION</u>

34.     For all of the reasons stated in this Memorandum of Law and the Emergency Motion, the Court should enter the Order attached as <u>Exhibit A</u> to the Emergency Motion and grant the Foreign Representatives the Provisional Relief requested in the Emergency Motion and such other and further relief as the Court finds necessary and appropriate under the circumstances present.

*[Signature Page Follows]*

19

Dated:  Wilmington, Delaware
       May 28, 2020

Respectfully submitted,

**DLA PIPER LLP (US)**
By:  /s/ R. Craig Martin
R. Craig Martin, Esq. (DE Bar No. 5032)
1201 North Market Street, 21st Floor
Wilmington, DE 19801
Tel:  (302) 468-5700
Fax:  (302) 778-7834
Email:  craig.martin@us.dlapiper.com

-and-

Thomas R. Califano, Esq.
Erik F. Stier, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel:  (212) 335-4500
Fax:  (212) 335-4501
Email:  thomas.califano@us.dlapiper.com
       erik.stier@us.dlapiper.com

*Attorneys for the Foreign Representatives*

20